IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CR-00206-M-BM

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | ORDER |
| MARTAVIOUS AHMAD TYSON, | |
| Defendant. | |

This matter comes before the court on Defendant's Motion to Suppress [DE 56]. He moves to suppress all evidence seized and derived from a warrantless search of a backpack on June 7, 2023. *Id.* at 1. For the following reasons, the motion is denied.

**I.    Procedural History**

On June 25, 2024, a grand jury returned an indictment charging Defendant with possession with the intent to distribute fifty grams or more methamphetamine, in violation of 21 U.S.C. § 841(a); possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) . DE 1 at 1–2. All three charges stem from an encounter with law enforcement on July 3, 2023. *See id.*

Defendant was arrested federally on July 8, 2024, and he had his initial appearance before United States Magistrate Judge Brian S. Meyers the following day. *See* DE 8. After an evidentiary hearing, Defendant was ordered detained pending trial by Judge Meyers. DE 16, 18. On September 30, 2025, Defendant moved to suppress all evidence found inside a backpack during his July 3, 2023, encounter with law enforcement. DE 56. The United States filed a response in

opposition. DE 63. An evidentiary hearing was held on November 6, 2025, and the court ordered the parties to file supplemental briefing. DE 64. The parties submitted their briefs on December 12, 2025. DE 70, 71. The court is now fully apprised of the evidence and the parties' respective positions on the state of the law, and this matter is ripe for review.

## II.    Findings of Fact

The facts of this case are straightforward and relatively undisputed. Around 9:00 a.m. on June 7, 2023, Officer Taylor Hoganson with the Fayetteville Police Department observed a gray 2008 Hyundai Elantra driving on the road. *See* Gov's Ex. A at 0:32–0:53. Officer Hoganson knew that a similar car had been reported stolen and was believed to be in the area. He ran the car's license plate and determined that it was reported to be stolen. *Id.* at 0:54–1:03. He initiated a traffic stop and directed the driver—later determined to be the defendant in this case, Martavious Ahmad Tyson—to exit the vehicle. *Id.* at 1:35–2:47. Initially, Defendant complied, but when Officer Hoganson attempted to place him in handcuffs, he fled on foot. *Id.* at 2:53–3:14. He was quickly subdued, handcuffed, and placed in the back of a police vehicle. Gov's Ex. B at 0:00–1:49.

Law enforcement then conducted a search of the vehicle. Officer Hoganson identified the vehicle's identification number ("VIN") and confirmed that it was stolen. As that process was occurring, other law enforcement officers discovered a black backpack in the front passenger seat of the car. *Id.* at 2:26. The main compartment of the backpack was open. *See id.* Inside, officers found methamphetamine, a scale, several clear sandwich bags, a loaded Taurus revolver, and U.S. currency. *Id.* at 5:42–13:00. After unsuccessfully attempting to contact the vehicle's owner, the vehicle was towed by law enforcement.

2

### III. Legal Standards

#### A. Reasonable Expectation of Privacy

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The text confers a "personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also Katz v. United States*, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places."). To that end, the standing doctrine requires Fourth Amendment challenges to identify an alleged violation of a defendant's personal rights. *Rakas v. Illinois*, 439 U.S. 128, 133 (1978). This serves to distinguish true "victims" of an unlawful search or seizure from those merely "prejudiced" by the use of evidence. *Jones v. United States*, 362 U.S. 257, 261 (1960) (overruled in part on other grounds); *see also Alderman v. United States*, 394 U.S. 165, 174 (1969) (holding that Fourth Amendment rights may not be "vicariously asserted"). To establish standing, "a defendant must show both 'that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Smith*, 21 F.4th 122, 129 (4th Cir. 2021) (quoting *Carter*, 525 U.S. at 88).

A defendant does not have a legitimate expectation of privacy in a stolen vehicle. *United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981); *see also Smith*, 21 F.4th at 130 ("[I]f a passenger asserts neither a property interest nor a possessory interest in the car . . . that passenger normally has no legitimate expectation of privacy."). Accordingly, "a person present in a stolen automobile at the time of [a] search may not object to the lawfulness of [that] search." *Byrd v. United States*, 584 U.S. 395, 409 (2018) (quoting *Rakas*, 439 U.S. at 141 n.9). "No matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy

3

in a stolen car." *Id.* This principle applies to personal effects found inside the car, "whether or not they are enclosed in some sort of container." *Hargrove*, 647 F.2d at 412. After all, "[o]ne who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile." *Id.* (noting further than a defendant cannot reasonably treat a stolen vehicle as a "private repository for his person effects).

B.    Good Faith

When evidence is obtained in violation of a defendant's Fourth Amendment rights, the remedy is typically to "prohibit[ its] introduction at criminal trial." *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 359 (1998). "[T]he sole purpose of the rule is to deter future Fourth Amendment violations, and its application properly has been restricted to those situations in which its remedial purpose is effectively advanced." *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014) (internal quotations omitted) (quoting *Davis v. United States*, 564 U.S. 229, 236–37 (2011) and *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). The remedial purpose of the exclusionary rule is most effectively advanced "[w]hen police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights[.]" *Davis*, 564 U.S. at 238 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). The exclusionary rule "it is not," in other words, "a 'strict-liability regime.'" *United States v. Ray*, 141 F.4th 129, 141 (4th Cir. 2025) (Rushing, J., dissenting) (quoting *Davis*, 564 U.S. at 240).

Consistent with these parameters, the Supreme Court has recognized that the exclusionary rule is inapplicable to situations where "police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis*, 564 U.S. at 238 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). This applies to "a variety of circumstances involving Fourth Amendment violations." *Stephens*, 764 F.3d at 336 (collecting cases). As relevant here, it applies when

4

evidence is obtained by law enforcement "during a search conducted in reasonable reliance on binding precedent[.]" *Davis*, 564 U.S. at 241.

    C.    <u>Inevitable Discovery</u>

"The Fourth Amendment generally requires police to secure a warrant before conducting any search." *United States v. Banks*, 482 F.3d 733, 738 (4th Cir. 2007). An exception to that rule is the inevitable discovery doctrine, which "allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'" *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

Evidence is obtained through "lawful means" if it is discovered during a proper "inventory search," which does not trigger a warrant requirement. *United States v. Seay*, 944 F.3d 220, 223 (4th Cir. 2019). An inventory search is lawful when (1) "the circumstances reasonably justified seizure or impoundment;" and (2) "law enforcement conducts the inventory search according to routine and standard procedures designed to secure the vehicle or its contents." *Bullette*, 854 F.3d at 265 (citing *Colorado v. Bertine*, 479 U.S. 367, 371–76 (1987)). Law enforcement may reasonably impound a car in furtherance of their "community caretaking functions," *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976), when the owner of the vehicle is not present or otherwise available to assume custody. *Bullette*, 854 U.S. at 265. Routine and standard procedures may be demonstrated "by reference to either written rules and regulations or testimony regarding standard practices.'" *Seay*, 944 F.3d at 223 (quoting *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016)). While inventory searches may not serve as "a ruse for general rummaging," *Florida v. Wells*, 495 U.S. 1, 4 (1990), they "may leave the inspecting officer 'sufficient latitude to determine

5

whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself.'" *United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007) (quoting *Wells*, 495 U.S. at 4).

D.    <u>Search Incident to Lawful Arrest</u>

A second exception to the warrant requirement arises when a defendant is arrested. *See Chimel v. California*, 395 U.S. 752, 756 (1969). Under *Chimel*, incident to a lawful arrest, police may search "the space within an arrestee's immediate control, meaning the area from within which he might gain possession of a weapon or destructible evidence." *Arizona v. Gant*, 556 U.S. 332, 335 (2009) (citing *Chimel*, 556 U.S. at 763) (cleaned up). This principle allows law enforcement to "search a vehicle incident to a recent occupant's arrest" but "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 343. Put another way, absent reason to believe that evidence of the crime of arrest would be found within a vehicle, *Chimel* and its progeny do not permit law enforcement to conduct that vehicle search "after the arrestee has been secured and cannot access the interior of the vehicle." *Id.* at 335.

## IV.    Discussion

Defendant moves to the suppress all evidence found in the backpack pursuant to *Gant*, arguing that because he was handcuffed and in the back of police car at the time of the search, law enforcement needed a warrant to search the bag. DE 56 at 6. The United States counters that Defendant lacks standing to challenge the search of the backpack and, alternatively, that any evidence seized is admissible under the good faith and inevitable discovery doctrines. DE 63 at 1; DE 71 at 9.

6

At the outset, the court notes that the United States has not meaningfully argued that the warrantless search of the vehicle was justified under *Gant*—and for good reason. There, the Supreme Court held that law enforcement may not search a vehicle incident to an arrest once a defendant "has been secured and cannot access the interior of the vehicle." *Gant*, 556 U.S. at 335. Defendant was unquestionably in such a position here. The United States briefly suggests that the search did not occur incident to Defendant's arrest because he attempted to flee without the backpack. DE 71 at 8. This factual distinction is dubious, but in any event, it would not support the United States' position that the search was lawful. *Gant* and its progeny outline a circumstance in which a warrant is *not* required to conduct a search; to the extent the doctrine is inapplicable, law enforcement would need independent justification to search both the car and the backpack. Accordingly, because the search in this case cannot be justified under *Gant*, disposition of the pending motion will turn on the doctrines of standing, good faith, and inevitable discovery. The court addresses each doctrine in turn.

### A.    Reasonable Expectation of Privacy

Defendant acknowledges that the plain language of *Hargrove* presents a formidable obstacle to his position that he has standing to bring this constitutional challenge. *See* DE 70 at 3–4. Still, he calls into question "the continued vitality" of *Hargrove*'s "bright-line rule" and argues that it has been abrogated by the Supreme Court's decision in *Gant* and the Fourth Circuit's decision in *United States v. Davis*, 997 F.3d 191, 197 (4th Cir. 2021). *Id.* at 4. Arguments of this sort create a heavy lift for any party. "When the Fourth Circuit has not overruled one of its precedents, that precedent . . . binds this [c]ourt unless a Supreme Court decision has 'specifically rejected' or 'clearly undermined'" it. *United States v. Lane*, 689 F. Supp. 3d 232, 240 (E.D. Va. 2023) (internal citations omitted) (quoting *Qingyun Li v. Holder*, 666 F.3d 147, 150 (4th Cir. 2011)

7

and (*United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998)). After careful review of both *Gant* and *Davis*, the court concludes that this has not yet occurred.

Forty-five years ago, the Fourth Circuit held that a defendant who cannot assert a "legitimate claim to the car he was driving" may not challenge a search of that car and, by extension, any containers found within it. *Hargrove*, 647 F.2d at 412. The case turned on straightforward facts. Law enforcement had secured an arrest warrant for Wayne McNair Hargrove. *Id.* at 412. When they attempted to execute it, Hargrove fled in a vehicle. *Id.* After a brief chase, he was stopped, arrested, and handcuffed. *Id.* Law enforcement searched the vehicle and discovered a paper bag containing three plastic bags of cocaine. *Id.* At a suppression hearing, the United States presented evidence that the vehicle had been reported stolen in Michigan and that its identification number had been altered. *Id.* Hargrove presented no evidence to the contrary and asserted no ownership interest over the car or the paper bag. *Id.* The Fourth Circuit held that Hargrove "did not have a legitimate expectation of privacy in the car he was driving and that he lacked standing to object to a search of the vehicle." *Id.* More importantly for this case, it also held that because he had no legitimate claim to the vehicle, he had no reasonable expectation of privacy in personal effects found within it, "whether or not they [were] enclosed in some sort of container, such as a paper bag." *Id.* After all, the Fourth Circuit said, a person cannot reasonably treat a stolen car as "a private repository for his personal effects[.]" *Id.*

Defendant contends that Fourth Amendment doctrine "has shifted considerably" since this decision. DE 70 at 5. As stated previously, he points principally to the Supreme Court's decision in *Gant* and argues that it undermines *Hargrove*'s rationale. *Id.*

In *Gant*, the Supreme Court considered how to apply "the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement[.]" *Gant*, 556 U.S. at 335. There, law

8

enforcement arrested Rodey Gant when he arrived at a residence that was under surveillance for suspected drug trafficking. *Id.* at 335–36. At the time, officers knew of an outstanding warrant for Gant's arrest. *Id.* at 336. When Gant arrived, he exited his vehicle and shut the door. *Id.* Immediately afterwards, law enforcement arrested and handcuffed him and placed him in the backseat of a police vehicle. *Id.* Two officers then searched his car and discovered a gun and a bag of cocaine. *Id.* This search, the Supreme Court held, was impermissible. It announced that law enforcement may only search a vehicle incident to a defendant's arrest without a warrant if the defendant "is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe that the vehicle contain[ed] evidence of the offense of arrest." *Id.* at 351.

The Fourth Circuit concluded that the same rule applies to containers found outside a vehicle. *Davis*, 997 F.3d at 197. In other words, law enforcement may search "non-vehicular containers incident to a lawful arrest 'only when the arrestee is unsecured and within reaching distance of the container at the time of the search.'" *Id.* (internal brackets omitted) (quoting *Gant*, 556 U.S. at 343).

The rule in *Hargrove* has not been abrogated by *Gant* and *Davis*. Indeed, both sets of cases answer entirely different questions. *Hargrove* examined the threshold issue of whether a defendant has "a legitimate expectation of privacy" in the place searched such that the Fourth Amendment is even implicated at all. *See United States v. Salvucci*, 448 U.S. 83, 92 (1980). *Gant* and *Davis*, by contrast, both presupposed that the defendants had such an interest; the relevant question was only whether an invasion into a concededly legitimate privacy interest was justified under the search-incident-to-arrest doctrine. *See Davis*, 997 F.3d at 203 ("It is the crucial role of courts to ensure that the government conducts searches of property *in which individuals have a reasonable*

9

*expectation of privacy* only when permitted by a warrant or when one of the handful of limited exceptions to the warrant requirement applies.) (emphasis added); *Gant*, 556 U.S. at 351 (noting the circumstances in which a search of an "*arrestee's* vehicle" is unreasonable without a warrant) (emphasis added). These inquiries do not overlap; they are sequential. If a defendant does not have a legitimate expectation of privacy in a stolen vehicle and its contents, as *Hargrove* holds, then it does not matter how the search was conducted—that defendant could not have suffered constitutional harm. *See Katz*, 389 U.S. at 351 (noting that "the Fourth Amendment protects people, not places"); *Alderman*, 394 U.S. at 174 (holding that Fourth Amendment rights may not be "vicariously asserted"). Defendant is correct to note that Fourth Amendment doctrine has changed since *Hargrove* was decided, particularly as it relates to vehicles, but those changes have not cast doubt on *Hargrove*'s central holding. The Supreme Court, as recently as 2018, reaffirmed that "[n]o matter the degree of possession and control," a person "present in a stolen automobile at the time of the search may not object to the lawfully of the search" *Byrd*, 584 U.S. at 409 (internal brackets omitted) (quoting *Rakas*, 439 U.S. at 141 n.9). And while *Byrd* did not explicitly comment on whether that principle extends to containers found inside a vehicle, it certainly did not "specifically reject[]" or "clearly undermine[]" a holding to that effect. *Lane*, 689 F. Supp. 3d at 240 (citations omitted). Moreover, the Fourth Circuit has cited to *Hargrove* for the container principle as recently as 2021. *See United States v. Smith*, 21 F.4th 122, 130 (4th Cir. 2021); *see also United States v. Ghazaryan*, 685 Fed. Appx. 222, 223 (4th Cir. 2017); *United States v. Mohammed*, 572 Fed. Appx. 203, 204 (4th Cir. 2014); *United States v. Howard*, 413 Fed. Appx.

10

559, 562 (4th Cir. 2011); *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994);[1] *United States v. Torres*, 946 F.2d 888 (Table), at *1 (4th Cir. 1991).

At bottom, Defendant disputes that an individual lacks a legitimate privacy interest in personal containers stored inside of a stolen car. *See* DE 70 at 6–7. As he notes, other courts have adopted a similar position. *See United States v. Edward*, 632 F.3d 633, 642 (10th Cir. 2001) (holding that a defendant had a legitimate expectation of privacy in personal effects stored inside of a rental car he was not authorized to drive); *People v. Sotelo*, 336 P.3d 188, 194 (Colo. 2014) (concurring with the holding in *Edwards*). But *Hargrove* is binding on this court, and until such time as it is overturned, either by the Supreme Court or the Fourth Circuit sitting *en banc*, it controls in situations like this.

With that established, *Hargrove*'s application to this case is straightforward. The United States presented evidence that the gray 2008 Hyundai Elantra driven by Defendant was stolen. Officer Hoganson testified that prior to his encounter with Defendant, he received information that a car of the same make and model had recently been reported stolen and was believed to be in the area. This was corroborated twice over, first when Office Hoganson encountered Defendant and

---

[1] The *Wellons* court held that an unauthorized driver of a rental car lacks standing to raise a Fourth Amendment challenge if that car is searched. *Wellons*, 32 F.3d at 119. Defendant points out in his supplemental brief that the Fourth Circuit later questioned the soundness of that decision, noting that sister circuits had held that an unauthorized driver would have standing if "he or she received permission to use the car from the lessee." *United States v. Houston*, 689 Fed. Appx. 170, 172 n.2 (4th Cir. 2017) (citations omitted). That rationale was largely adopted by the Supreme Court in *Byrd*, 584 U.S. at 411 (holding that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy"). Defendant suggests that *Houston*, and by extension *Byrd*, call *Hargrove* into question, *see* DE 70 at 8, but that is not so. The holding in *Byrd*—and the musings in *Houston*—turned "on the concept of lawful possession[.]" *Byrd*, 584 U.S. at 409. An individual who has stolen a car is in a materially different position from an individual who borrowed a car from a legitimate lessee. There was no lawful possession in *Hargrove*, so Defendant's comparison is inapposite.

11

ran his license plate and second when he searched for the vehicle's identification number after Defendant's arrest. Gov's Ex. A at 0:54–1:03. Defendant did not rebut this testimony. To date, he has not asserted an ownership interest in either the car or the backpack that was found inside it. Because he did not "show . . . that he acquired the car innocently[,]" he has not met "his burden to establish standing to contest the search[.]" *Hargrove*, 647 F.2d at 412. This applies to both the search of the vehicle and the backpack stored inside. *Id.* For this reason, his motion must be denied.

      B.    <u>Good Faith</u>

Alternatively, the court finds that the exclusionary rule is inapplicable because the search of the backpack was "conducted in reasonable reliance on binding precedent." *Davis*, 564 U.S. at 241. At the time of the challenged search, the Fourth Circuit had held, in no uncertain terms, that unauthorized drivers of stolen vehicles lacked a reasonable expectation of privacy in containers found inside those vehicles. *See Hargrove*, 647 F.2d at 412. The officers in this case were permitted, then, to conduct a search of the stolen Elantra because Defendant, as the unauthorized driver, could not suffer constitutional harm if the vehicle was searched. *See id.*

Even if, as Defendant contends, *Hargrove*'s holding has been called into question, "all that exclusion would deter in this case is conscientious police work." *Davis*, 564 U.S. at 241. "[W]hen binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." *Id.* (emphasis omitted). That is all that occurred here. The court perceives no misconduct on behalf of law enforcement—and certainly no "deliberate, reckless, or grossly negligent" misconduct that would trigger the "harsh sanction of exclusion." *Id.* at 238, 240 (cleaned up).

In sum, the court finds that law enforcement "would have reasonably believed that their search [of the backpack] 'was in accord with the Fourth Amendment.'" *United States v. May*, 747 F. Supp. 3d 832, 845 (E.D.N.C. 2024) (quoting *Leon*, 468 U.S. at 909). Suppression is not, therefore, an appropriate remedy.

    C.    <u>Inevitability Discovery</u>

Finally, the court finds by a preponderance of the evidence that, even if Defendant had standing to bring this challenge, exclusion is unwarranted because "an inventory search . . . would have inevitably uncovered the evidence in question." *See Bullette*, 854 F.3d at 265.

Officer Hoganson testified that the search of the vehicle was done in accordance with two Fayetteville Police Department policies, which have since been provided to the court by both parties. *See* DE 70-1, 70-2, 71-1, 71-2. Policy Statement 3.13 establishes the procedure for reporting and recovering stolen vehicles. *See* DE 70-2, 71-2. The statement provides:

> When an officer is dispatched or locates a stolen vehicle, Communications will be notified of the license plate number and the VIN number. Upon confirming that the vehicle is stolen, the dispatcher will attempt to notify the owner of the vehicle . . .

> If the vehicle is drivable, and the owner is local, the officer will stand by until the owner arrives on the scene. Officers will give the owner a reasonable amount of time to arrive (at least 30 minutes). If the time becomes excessive, the officer will notify their supervisor to determine if he should continue to wait or request a rotation wrecker.

> If an owner cannot be contacted[,] the office will have the vehicle towed in accordance with the department towing policy. Officers will document in the police report the name and location of the wrecker service that towed and stored the vehicle.

DE 70-2 at 2–3; 71-2 at 2–3. Policy Statement 4.4 establishes the procedure for towing vehicles.

*See* DE 70-1, 71-1. It provides:

> Any office having a vehicle towed will conduct an inventory of all property in the vehicle. If a key is available, the trunk and the glove compartments will be inventoried . . . Locked or sealed items such as suitcases and boxes normally will

13

not be forcibly opened. Enter a brief description of the items (e.g. "one locked, brown briefcase") on the Vehicle Storage Receipt section of POL-431 or Electronic Towing Report and secure the item by placing it in the trunk of the vehicle, if possible.

DE 71-1 at 4, 72-1 at 4.

First, the court finds, and neither party disputes, that the circumstances surrounding Defendant's arrest "reasonably justified seizure or impoundment" of the vehicle. *See Bullette*, 854 F.3d at 265. Officer Hoganson testified that law enforcement attempted to get in contact with the owner of the stolen Elantra. Initially, they were unsuccessful, so the vehicle was towed and stored until such time as the owner could be reached. Because the lawful owner "was not present to make other arrangements for the safekeeping of his belongings[,]" impoundment of the vehicle was proper. *See Opperman*, 428 U.S. at 375; *see also Bullette*, 854 F.3d at 265 ("Impoundment constitutes a reasonable course of action when the owner of a vehicle abandons it, or law enforcement cannot identify the owner.").

Second, the court finds that the "routine and standard procedures" described in the policy statements would have uncovered the evidence Defendant now seeks to suppress. *See Bullette*, 854 F.3d at 265. Policy Statement 4.4 directs law enforcement to "conduct an inventory of all property" inside a vehicle before it is towed. DE 71-1 at 4. It qualifies that "[l]ocked or sealed items" will not typically "be forced open." *See id.* Here, the challenged evidence was found in a black backpack that was sitting prominently on the front passenger seat of the stolen Elantra. *See* Gov's Ex. B at 2:26. Defendant argues that the policy statement does not "directly authorize" the search of that backpack, asserting that (1) there is "no record evidence" as to whether the backpack was open at the time it was seized and (2) the policy is unclear as to whether a closed backpack should be opened as part of an inventory search. DE 70 at 3. As to the first point, the body camera footage provided by the government clearly shows that at the time law enforcement first seized

14

the backpack, the zipper of the main compartment was open. *See* Gov's Ex. B at 2:26; *see also* DE 63-1 (Notice of Manual Filing). It was not, therefore, a "[l]ocked or sealed item," and law enforcement was not required to "forcibly open[]" it.[2] *See* DE 71-1 at 4.

Even if it the zipper was closed, the Policy Statements do not prohibit law enforcement from taking inventory of a "sealed item[.]" *See id.* (noting that locked or seal items are not "*normally*" forced open). In response to a question from this court, Officer Hoganson testified that he did not ask Defendant about the backpack because he expected it to be opened in accordance with department policy. And earlier, in response to a question from the United States, he testified that the thorough inventory search of the vehicle was conducted according to department policy to ensure that nothing dangerous remained in the car. Because "reference to *either* written rules and regulations or testimony regarding standard practices" are sufficient to establish applicable routine and standard procedures, the court finds that Officer Hoganson's testimony establishes, by a preponderance of the evidence, that a closed backpack in a stolen vehicle was subject to an inventory search. *See Seay*, 944 F.3d at 223 (emphasis added) (quoting *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016)).

For these reasons, application of the exclusionary rule is inappropriate. *See Bullette*, 854 F.3d at 265.

## V. Conclusion

For each of the three aforementioned and independently sufficient reasons, Defendant's

---

[2] The court doubts that opening a backpack zipper constitutes a use of force as contemplated by the Policy Statements. However, as neither Officer Hoganson nor the parties have offered an opinion in this regard, the court declines to make a formal finding. Ultimately, it has no impact on the application of the inevitable discovery doctrine.

15

Motion to Suppress [DE 56] is DENIED.

SO ORDERED this ___27___ day of January, 2026.

_Richard E Myers II_____
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE